THE STATE, THE NEW JERSEY RAILROAD AND TRANSPORTATION COMPANY, AND THE ESSEX AND MIDDLESEX TURNPIKE COMPANY, ET AL., PROSECUTORS, v. THE CITY OF ELIZABETH.

1. The words, "that no other or further tax or imposition shall be levied or imposed upon the said company," in the charter of The New Jersey Railroad and Transportation Company, refer exclusively to taxation for general purposes, and are not applicable to assessments for local improvements. The case of *The State* v. *Newark*, 3 *Dutcher* 185, which adopted that construction, was not over-ruled by *The Foster Home Case*, 7 *Vroom* 478.

2. The special and peculiar benefit which legalizes an assessment for local improvements must be a present benefit immediately accruing

from the construction of the work, the test of which is the influence of the proposed improvement on the present market value of the property.

3. An assessment on a railroad company, for paving a street crossing their railroad, set aside on the ground that the company derived no benefit therefrom in the improvement of their lands for the uses to which they were appropriated.

4. An assessment against the prosecutors for a sewer one third of a mile distant from their premises, which is incapable of draining their lands and in its present condition is of no benefit to them, and is not part of a system of sewerage which, when completed will reach the prosecutors' lands, cannot be sustained. The probability that the city, in the future, may project a sewer to form a connection with the present sewer which shall benefit the prosecutors' lands, is too remote to have any appreciable influence on the value of their lands.

On *certiorari*.

Argued at June Term, 1874, before Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiff in *certiorari*, *W. J. Magie*.

For the defendants, *R. E. Chetwood*.

The opinion of the court was delivered by

DEPUE, J. The writs in these cases bring up two assessments for benefits against the prosecutors—the one for paving North avenue, from Broad street to Jefferson avenue, the other for the construction of a sewer, commencing in Mill lane, at the Elizabeth river, and running thence in Morris avenue to Stiles street, and also a sewer to connect therewith, in Elm street, from Morris avenue to Cherry street.

The Essex and Middlesex Turnpike Company was incorporated in 1806. (*Acts*, 1806, *p.* 612.) The New Jersey Railroad and Transportation Company, by the tenth section of its charter, was authorized to purchase the turnpike roads and bridges on its route, or the capital stock thereof, and to hold the same as stockholders therein. (*Acts*, 1832, *p.* 101.) In pursuance of this authority the railroad company purchased the stock of the turnpike company and located its road, and laid its rails on the bed of the turnpike road.

The assessments in both cases were made against the New

Jersey Railroad Company. It is contended that this company is exempted from assessments of this character by the eighteenth section of its charter. The words used in that section, in defining the limit of the company's exemption, are "tax or imposition." In *The City of Paterson* v. *The Society for Useful Manufactures,* 4 *Zab.* 385, and *The State* v. *Newark,* 3 *Dutcher* 185, it was decided that the words "tax or imposition," refer exclusively to taxation for general revenue for the public uses of city, county or state. The case last cited is a construction of the section of the company's charter in question. These cases are not overruled by the Court of Errors in *The State, The Protestant Foster Home Society, pros.,* v. *Newark,* 7 *Vroom* 478, but, on the contrary were recognized as good law. The reversal in that case was put on the use of the word "assessment," in the exemption clause of the prosecutors' charter, which, in the reversing opinion was declared to be expressive of an entirely different thing from the words "taxes and impositions." If the prosecutors are to be relieved from these assessments it will not be by force of the exemption in the charter of the railroad company, but for the reason that they have not, in these instances, received an equivalent in benefits for the contribution they are required to make towards the expenses of these public improvements.

*First.* As to the assessment for paving—

North avenue crosses the railroad track at nearly a right angle. The paving, towards defraying the expenses of which the assessment was laid, extends along the avenue about six blocks. The assessment was made against the prosecutors equally with the owners of lands fronting on the improvement, in proportion to frontage.

The avenue does not cross the railroad near any of its depots ; therefore no benefit is derived from the improvement by reason of increased facilities of access to its depot, and a probable increase of business thereby. But if the company was benefited in this way, the assessment could not be sustained on that ground. An assessment on the basis of benefits derived from increased facilities in the avenues of approach

to the company's depot, by widening, paving, or otherwise improving the streets, would be a tax in violation of the exemption in its charter. *The State* v. *Newark*, 3 *Dutcher* 186–191 ; *The State, M. & E. R. R. Co., pros.,* v. *Jersey City,* 7 *Vroom* 56.

Nor can this assessment be supported on the other ground of benefits conferred in the advantage derived in the improvement of the company's lands for the uses to which they are appropriated. The proof is, that the paving laid on the crossing of the street over the railroad track, is an injury, rather than a benefit to the company, and occasions increased expenses in keeping the track in repair. The case, in this respect, is within the decision of this court in *The State, The M. & E. R. R. Co., pros.,* v. *Jersey City, supra ;* and the assessment for paving must be set aside.

*Second.* As to the assessment for constructing the sewer :

The assessment is laid on the line of railroad of The New Jersey Railroad and Transportation Company, from Mary street to a point about nine hundred feet east of Port avenue.

Among the reasons assigned and relied on is, that the said line of railroad is a public highway, and, therefore, not liable to assessments for such improvements. The premises are the property of the company, and are owned and used by it for the emolument of the company and its stockholders. The drainage of lands devoted to that purpose, and so used, by the construction of sewers, may be a direct benefit to it in the use to which the lands are appropriated, in making more solid the foundation of the road-bed, and relieving it from the flow of surface water. Benefits accruing, in this manner, from the construction of a public improvement, are of a character that will justify the laying of assessments for the costs and expenses thereof within the limit of the benefits conferred.

There is nothing in the purpose for which the company was incorporated, or the use to which the lands are appropriated, that will invalidate the assessment. It must, therefore, be affirmed, unless its imposition, in this case, is a violation of the principles laid down in the Tide Water case, that an

assessment on an individual owner towards defraying the costs of a local improvement, must be founded on some peculiar benefit derived by him from its construction over and above that of the public, and that the amount which he may lawfully be required to contribute to that end, is limited to the quantum of benefit he receives.

The report of the commissioners making the assessment, is defective in not showing affirmatively and distinctly that the assessment was made in proportion to the advantages each lot assessed derived from the improvement, as required by the supplement of 1873, under which the assessment was made.

But disregarding the form in which the assessment is reported, the question discussed by counsel on the merits, will be considered.

The sewer, for the construction of which this assessment was made, does not cross or touch the lands of the prosecutors. Its location at the nearest point, is from one-third to one-half a mile distant from the premises on which the assessment is laid, and none of its connections extend in that direction. It does not afford a means of drainage of the prosecutors lands, the surface water therefrom being discharged in another direction into the Elizabeth river, and is incapable of being used for such drainage, without being connected therewith by means of other sewer connections, which have not yet been projected. The proof is, that the sewer in its present condition is of no benefit to the prosecutors lands.

The contention of the counsel of the prosecutors is, that the special and peculiar benefit which shall legalize an assessment for the expenses of a local improvement, must be a present benefit immediately accruing from the construction of the work in question, the test of which is the influence of the proposed improvement on the present market value of the property. Such substantially is the rule laid down by this court in *The State, The Protestant Foster Home Society, prosecutor, v. Mayor of Newark, 6 Vroom* 157.

The argument on the other side is, that when a sewer shall be constructed to connect with the present sewer, which shall

drain the prosecutors premises, they will have the advantage of the diminished cost of such sewer, in having its outlet within a shorter distance; and that, therefore, they derive an immediate benefit in that respect from the present sewer.

If the present sewer were part of a system of sewerage legally adopted, whose branches, when the work in its entirety should be completed, would benefit the prosecutors, I might be willing to adopt this view.

But it will be perceived that the argument assumes that such connecting sewer will be built; an assumption not justified as a legal conclusion by the circumstances of the case.

The ordinance projecting this improvement, contemplated nothing beyond the construction of the sewers which have been built. No ordinance has been passed or proposed, for an extension or connecting sewer, which in its operations will benefit the prosecutors lands by draining them. Such connections may never be made. The authorities who may have the control of public affairs, may never conclude to construct a sewer for the drainage of the prosecutors land, and if they do they may locate it in such a way that its connections may not be with the present sewer. It is manifest that a probability depending on so many contingencies will have no appreciable influence on the value of the lands on which this burden is imposed, and therefore is not an equivalent for the moneys which the prosecutors are required to disburse under this assessment.

The assessment in both cases are set aside. The costs of the returns and of the printing, are allowed to the prosecutors.